(No. 36887.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* RAPHAEL DURR, Plaintiff in Error.

*Opinion filed May 27, 1963.—Rehearing denied September 26, 1963.*

Schaefer, J., Klingbiel, C.J., and Hershey, J., dissenting.

S. H. JAKALA, of Summit, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and RUDOLPH L. JANEGA and MATTHEW J. MORAN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

After a trial before a judge of the criminal court of Cook County, the defendant, Raphael Durr, was convicted of unlawfully possessing narcotic drugs, and sentenced to imprisonment for a term of from two to seven years. On

this writ of error he seeks reversal of his conviction on the ground that evidence which was the product of an unlawful search was erroneously admitted in evidence against him.

The police officer's search of the defendant's person at the time of his arrest revealed 45 pink capsules. It was stipulated that they contained heroin. Upon the hearing of the defendant's motion to suppress this evidence, it appeared that the defendant and a companion drove into a parking lot in the 200 block of Marquette Road in the city of Chicago shortly before noon on February 22, 1961. As the defendant left the car, he was hailed by a police officer, James Webster, whom he knew, who arrested him and made the search that produced the heroin. A search of the automobile and of the defendant's companion revealed nothing further, and the companion was released.

Officer Webster testified that a short time before the arrest he had a conversation with a person he knew as an informer, who told him that a man named Ray was peddling narcotics, was traveling in an old, blue automobile, and would be making a delivery of narcotics to the 200 block in Marquette Road. The informer described the man as a Negro, about 50 years of age, about five feet nine in height, and as weighing 155 or 160 pounds. Acting on this information, officer Webster and two fellow officers went to the area described. After a short wait they saw the defendant drive into the parking lot in a car that fitted the description they had been given. The police car followed the defendant into the lot and officer Webster made the arrest. No warrant for the arrest or for the search was obtained.

Officer Webster testified that he had been acquainted with the defendant for some time and had known him as Ray, although he did not relate the description supplied by the informer to the defendant until he saw the defendant in the car. He stated that during the 25 years or more of their acquaintance, he had never known the defendant

to use or peddle narcotics. Upon this evidence, the trial judge denied the defendant's motion to suppress, and found the defendant guilty.

A search of the person without a warrant is proper, and the evidence found is admissible, if the search is incident to a lawful arrest. (*People* v. *Pitts,* 26 Ill.2d 395; *People* v. *Hightower,* 20 Ill.2d 361; *United States* v. *Rabinowitz,* 339 U.S. 56, 94 L. ed. 653.) The lawfulness of an arrest without a warrant depends upon whether the officer "has reasonable ground for believing that the person to be arrested has committed" the criminal offense. Ill. Rev. Stat. 1959, chap. 38, par. 657.

Reasonable grounds for believing that a person has committed a criminal offense may be found in information furnished by an informer if the reliability of the informer has been previously established or independently corroborated. (*People* v. *Tillman,* 1 Ill.2d 525; *People* v. *LaBostrie,* 14 Ill.2d 617; *Draper* v. *United States,* 358 U.S. 307, 3 L. ed. 2d 327.) The reliability of the informer was here established by the testimony of officer Webster, who stated that he had received information previously from the same informer and that such information had proved to be accurate. On cross-examination, the officer was twice asked to identify the informer and each time an objection to the question was made and sustained by the court. While no ground for the objections was specified by counsel, and no comment made by the court in sustaining them, it is argued before us that the ruling was justified by the "informer's privilege". This privilege of the government to withhold the names of those furnishing information concerning crimes to law enforcement officers is designed to encourage citizens in their obligation to aid in enforcement of the law by preserving their anonymity. It has been uniformly recognized. (8 Wigmore on Evidence, secs. 2374 et seq.; *Roviaro* v. *United States,* 353 U.S. 53, 1 L. ed. 2d 639, 77 S. Ct. 623; *People* v. *Mack,* 12 Ill.2d 151.)

Also indicative of the desirability of protecting the identity of informers is the United States Supreme Court's statement in *Bowman Dairy Co.* v. *United States,* 341 U.S. 214, 221, 95 L. ed. 879, 885, 71 S. Ct. 675, 679, where, in discussing the right of the defendant to reach certain material by *subpoena duces tecum,* the court said: "Where the court concludes that such materials ought to be produced, it should, of course, be solicitous to protect against disclosures of the *identity of informants,* and the method, manner and circumstances of the Government's acquisition of the materials." (Emphasis supplied.)

The defendant here argues that refusing disclosure of the identity of the informer renders impossible an adequate cross-examination for the purpose of determining his reliability, and, in effect, makes the opinion of the police officer the sole determining factor; thus, defendant argues, the officer in effect settles the question of the validity of the arrest which he has made. The People maintain that to compel disclosure of the source of the information will seriously hamper effective law enforcement. It is argued by the People that defendant could have questioned the officer in greater detail regarding the informer's reliability. The record indicates the only cross-examination of the officer about the informer consisted of two requests for his name, objections to which were sustained. The People contend defendant could not assume that the court would sustain objections to such additional inquiries designed to determine reliability, such as asking whether arrests had been made and convictions obtained as a result of prior information given by the informer, or as to who was arrested, and when and how often information was secured from the informer. The contention is made that, having failed to exhaust the cross-examination possibilities, defendant cannot now complain. We prefer, however, to meet the fundamental issue squarely.

The basic question here is as to whether the right of the

individual to protection against the harassment of unreasonable searches and false arrests is superior to the necessity of protecting the public against the evils of organized crime. The Supreme Court in *Roviaro* v. *United States,* 353 U.S. 53, 1 L. ed. 2d 639, 77 S. Ct. 623, states the matter thusly: "The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors."

In *Roviaro* the informer drove his automobile, with an officer concealed in the trunk, to a rendezvous with defendant, and defendant then rode with the informer to the place where defendant picked up the narcotics and delivered them to the informer. The majority opinion there recognized the existence and value of the informer's privilege, but held that the privilege "must yield to the fundamental requirements of a fair trial." In discussing the question, a majority of the court specifically stated, (p. 62) "We believe that no fixed rule with respect to disclosure is justifiable," and then proceeded to hold disclosure there necessary on the ground that it would be "particularly unfair" to permit the government to use defendant's conversation with the informer, as testified to by the concealed police officer, against defendant without requiring disclosure of the identity of the informer who was there the sole participant, other than the accused, in the transaction charged.

We believe the facts in the case at bar are clearly distinguishable from *Roviaro,* and that our language in *People* v. *Mack,* 12 Ill.2d 151, 165, is particularly appropriate: "the record is barren of any showing or inference that he [the informer] either participated in the crime of the defendant or helped set up its commission," and, at page 166:

"In short, it is our opinion that, regardless of what the informer's testimony might have been, it would have little relevancy in face of the independent evidence by which the crime of March 22 was proved. Under such a circumstance, together with the facts which show that the informer neither participated in the crime nor was present at the time of the raid or arrest, amplification or contradiction of the information which caused the defendant to be placed under surveillance and caught in the commission of his crime would be of no assistance to his defense. We therefore see no unfairness to defendant, or any basis for upsetting the public purpose upon which the informer's privilege is said to rest."

We recognize that judicial opinion in this area of law is not unanimous. Among the decisions in agreement with the result here reached are: *Bruner* v. *United States* (5th cir.) 293 F.2d 621; *Pegram* v. *United States,* (6th cir. 1959) 267 F. 2d 781; *Miller* v. *United States* (5th cir. 1959) 273 F.2d 279; *Jones* v. *United States* (D.C. cir. 1959) 271 F.2d 494; *Hodges* v. *State,* 98 Ga. App. 97, 104 S.E.2d 704; *State* v. *Hardy,* (Fla.) 114 So.2d 344, and *Dixon* v. *State,* 39 Ala. App. 575, 105 S.E.2d 354 (unless informer is a participating decoy.) Typifying the decisions reaching an opposite conclusion are: *Priestly* v. *Superior Court,* 50 Cal. 2d 812, 330 P.2d 39 (a 4-3 decision); *United States* v. *Blich* (D. Wyo. 1930) 45 F.2d 627; *United States* v. *Keown* (W. D. Ky. 1937) 19 F. Supp. 639, and *Jones* v. *United States* (D.C. cir. 1959) 266 F.2d 924 (a 2-1 decision allowing a petition for leave to appeal in a case where the appeal was later dismissed as frivolous by a 2-1 decision reported in *Jones* v. *United States,* (D.C. cir. 1959) 271 F.2d 494.

In our consideration of this question we have been unable to perceive any necessity to hold inherent in the constitutional safeguards protecting those charged with crime the right to information completely irrelevant to the ques-

tion of innocence, disclosure of which would seriously hamper effective law enforcement, and we are convinced that the better result is the one here adopted. Considering also the deterrent aspects of the civil and criminal remedies for false arrests, it is our opinion that determination of probable cause by reliance upon the officer's testimony as to the reliability of an otherwise anonymous informer is likely to produce evils of far less consequence than those resulting from depriving the public of an important source of information necessary to the suppression of a particularly vicious form of crime.

Finding no error in the action of the trial court, the judgment of the criminal court of Cook County is hereby affirmed.

*Judgment affirmed.*

Mr. JUSTICE SCHAEFER, dissenting:

In *People* v. *Mack,* 12 Ill.2d 151, and *Roviaro* v. *United States,* 353 U.S. 53, the identity of the informer was sought to enable the defendant to adduce testimony bearing on the issue of guilt or innocence. In both cases the question considered was whether the defendant was deprived of a fair trial by the denial of a demand for disclosure of the informer's identity so that he could be called upon to testify at the trial on the merits of the criminal charge. In *Roviaro,* the claim was sustained, while in *Mack* it was rejected. I agree that the informer here, like the informer in *Mack,* was not so involved in the commission of the offense that his availability to testify was essential to fundamental fairness.

But that is not the issue in this case. Neither *Roviaro* nor *Mack* involved the question here presented: whether probable cause for an arrest without a warrant, and an incidental search, is established by a policeman's testimony that he received a tip from an unnamed and unidentified informer when the defendant's demand for disclosure is denied. In

*Roviaro* there was no search; the defendant was observed by the police officers in the act of delivering narcotics and was arrested at his home some time later. In *Mack,* no attack on the legality of the arrest or search was made in this court. There the officers had obtained a search warrant; here no warrant for search or arrest was issued. There the informer had appeared before two judges who examined his sworn complaint and questioned him orally. Here the policeman testified that he alone received the information. The fact is that neither the decision of the United States Supreme Court in *Roviaro* v. *United States,* 353 U.S. 53, nor our decision in *People* v. *Mack,* 12 Ill.2d 151, has any bearing on the question of the validity of the arrest and search now before us.

As the majority opinion observes, a search without a warrant is lawful if it is incident to a lawful arrest. But an arrest is not validated by the results of the subsequent search. Reasonable grounds must exist before the arrest is made. (*People* v. *Thomas,* 25 Ill.2d 559; *People* v. *Parren,* 24 Ill.2d 572; *Henry* v. *United States,* 361 U.S. 98.) We have held that a tip from a source unknown to the police officer is not sufficient, standing alone and without corroborative support, to sustain an arrest and an incidental search without a warrant. (*People* v. *Pitts,* 26 Ill.2d 395, 186 N.E.2d 357; *People* v. *Parren,* 24 Ill.2d 572.) But if the reliability of the informer has been established through past experience, or is now confirmed by conduct observed by the officers, or if the identity of the informer otherwise justifies the conclusion that reliance on the information supplied was reasonable, the arrest is valid. *People* v. *Parren,* 24 Ill.2d 572; *People* v. *LaBostrie,* 14 Ill.2d 617; *Draper* v. *United States,* 358 U.S. 307.

The majority opinion takes no issue with these principles nor does it question the authority that supports them. In their application, the question before us narrows to the single issue of the reliability of the unnamed and

unidentified informer. No other support for the arrest is offered. The only information that tended to cast suspicion on the defendant was that supplied by the informer to officer Webster. There is no independent corroboration of the informer's reliability in the activities of the defendant's companion, as there was in *People* v. *Tillman,* 1 Ill.2d 525, since here the companion was not involved. The officer's acquaintance with the defendant furnished no grounds for suspicion since he had never known the defendant to be engaged in the narcotics traffic. He observed no suspicious conduct.

The whole of the evidence pertaining to the reliability of this informer is contained in the answers to three questions asked by the prosecutor on the motion to suppress:

"Q. * * * Now, Officer Webster, on February 22, 1961, did you have an occasion to have a conversation with an individual whom you knew as an informer?

A. Yes, I did.

Q. Had you ever had a conversation with that individual previous to this date?

A. Yes, I did.

Q. Had this general information furnished to you in a prior conversation proved to be reliable?

A. Yes."

It may be open to doubt whether the fact that "general information" of an unspecified nature on an unspecified prior occasion had proved to be reliable supplies the sort of foundation on which a "prudent man would reasonably believe in the guilt of a person." (*People* v. *Pitts,* (No. 36975) 26 Ill.2d 395, 186 N.E.2d 357, 359.) But even if the testimony of the policeman, standing alone, might have supported a finding that the informer was reliable, it was deprived of probative force by the fact that the defendant, on cross-examination of officer Webster, twice asked and was twice denied the name and identity of the

informer. The defendant's right to test the reasonableness of the officer's conduct, and to impeach his testimony as to the reliability of the informer, was thereby frustrated. "To give vitality to the requirement of reliability the law requires, if no probable cause exists without the information from the informer, that his identity be divulged, so that his reliability may be subjected to meaningful judicial scrutiny rather than accepted on a policeman's word." *Jones* v. *United States*, (D.C. cir.) (1959) 266 F.2d 924, 929.

Here the defendant's conviction stands or falls on the determination whether there was reasonable ground for his arrest. That determination turns upon the existence and the reliability of the informer. There was no independent corroboration, and without knowledge of the identity of the informer the defense can not effectively contest the policeman's opinion as to his reliability. Rational appraisal by the court is foreclosed, and the policeman himself conclusively determines the validity of his own arrest.

The reason underlying this rule was thus explained by Mr. Justice Traynor in *Priestly* v. *Superior Court*, 50 Cal.2d 812, 818, 330 P.2d 39, 43 (1958) : "If an officer were allowed to establish unimpeachably the lawfulness of a search merely by testifying that he received justifying information from a reliable person whose identity cannot be revealed, he would become the sole judge of what is probable cause to make the search. Such a holding would destroy the exclusionary rule. Only by requiring disclosure and giving the defendant an opportunity to present contrary or impeaching evidence as to the truth of the officer's testimony and the reasonableness of his reliance on the informer can the court make a fair determination of the issue."

The answer to what the opinion of the court characterizes as the basic question here,—"whether the right of the individual to protection against the harrassment of unreason-

able searches and false arrests is superior to the necessity of protecting the public against the evils of organized crime,"—was given long ago. It is clearly stated in the provisions of the constitutions of the United States and of this State which prohibit unreasonable search and seizure. Those provisions charge the courts with the responsibility of enforcing limitations upon arrest and upon the introduction of illegally seized evidence. The courts can not discharge that responsibility unless they can look behind the policeman's assertion. I would therefore reverse the judgment and remand the cause for a new trial, in accordance with the weight of persuasive authority. *Scher* v. *United States,* 305 U.S. 251; *Wilson* v. *United States* (3rd cir.) 59 F.2d 390 (1932); *United States* v. *Blich,* 45 F.2d 627 (D. Wyo. 1930); *United States* v. *Keown,* 19 F. Supp. 639 (W.D. Ky. 1937); *Smith* v. *State,* 169 Tenn. 633, 90 S.W.2d 523.

KLINGBIEL, C.J., and HERSHEY, J., concur in this dissenting opinion.