(No. 41923.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
OCIE WILSON *et al.*, Appellants.

*Opinion filed March 24, 1970.—Rehearing denied October 6, 1970.*

GERALD W. GETTY, Public Defender, of Chicago, (SAUL H. BRAUNER, NORMAN W. FISHMAN, and JAMES J. DOHERTY, Assistant Public Defenders, of counsel,) for appellants.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (JAMES B. ZAGEL, Assistant Attorney General, and ELMER C. KISSANE and ANTHONY M. MONTEMURRO, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE WARD delivered the opinion of the court:

A jury in the circuit court of Cook County found the defendants, Ocie Wilson and James Burks, guilty of the unlawful sale of heroin. It was the third narcotics conviction for each defendant and each was sentenced by the court to 20 to 40 years in the penitentiary. In addition, Wilson was found guilty of unlawful possession of a narcotic drug and received a sentence of from 5 to 10 years on that charge. Wilson's sentences were ordered by the court to run concurrently. On appeal the defendants urge (1) that the trial court improperly denied their motion to suppress evidence obtained in a search incident to their arrest, and (2) that the evidence failed to establish their guilt beyond a reasonable doubt. A substantial constitutional question gives us jurisdiction on direct appeal. Ill. Rev. Stat. 1969, ch. 110A, par. 302(a).

The evidence at trial was that on the evening of December 27, 1967, a narcotics addict, Roger Joyce, who was a "special employee" of the Chicago Police Department, spoke with police officers Kelly and King. He told them he could make a controlled purchase of narcotics from one Ocie Wilson in the vicinity of 47th Street and Calumet Avenue in Chicago. The officers had known Joyce for approximately five years and were aware that he was a narcotics addict. During this period Joyce had supplied the officers with in-

formation which had led to numerous arrests and "some convictions." He told them that he knew Wilson was selling narcotics in the area described and also that he had recently purchased narcotics from him. The defendant Burks was not mentioned by the informer.

Joyce's clothing was then removed and the officers conducted a search to insure he had no currency or narcotics on his person or in his clothing. After dressing, the informer was given one ten-dollar and four one-dollar bills, which had been marked for identification and inventoried by serial numbers by Officer Kelly. The two officers and the informer then drove in an unmarked squad car to the 4700 block on Prairie Avenue. While in the squad car, the informer was given a walkie-talkie device which was to be used to inform the officers when the anticipated sale had taken place. The plan called for Joyce to press a button on the device three times when the sale had been made. That action by the informer would transmit three "clicks" to the radio receiver in the squad car informing the officers of the sale.

Joyce left the squad car and walked north on Prairie Avenue to 47th Street where he turned the corner and walked east. He was not again observed by the officers until some seven minutes later when he was seen walking north on Prairie Avenue from the direction of 48th Street. He was in the company of the defendants. Joyce testified that when he left the squad car he proceeded directly to a pool room at 47th Street and Calumet Avenue. The informer said that he approached the defendants and asked them if they had narcotics to sell. According to him, they answered yes, asked him how much money he had and, after he told them he had $14, they told him to follow them. The three walked south on Calumet to 48th Street, then west to Prairie and north on Prairie. The informer testified that while walking north on Prairie with the defendants, he gave Burks the $14 in marked currency, whereupon Wilson handed the narcotics to him. Joyce then gave the pre-

arranged signal by means of the walkie-talkie, which the police heard on their receiver. The officers then observed the defendants and the informer walking toward them, *i.e.,* north on Prairie Avenue. As the three passed the car, the officers left the car and placed the defendants under arrest. Joyce handed Officer King the silver foil package which he had received from the defendant Wilson. The defendants immediately after their arrest were "patted down" for weapons. None were found.

The three men were placed in the squad car by the officers and instructed to keep their hands on the back rest of the front seat. During the drive to police headquarters Officer King, who was in the front seat on the passenger's side watching the defendants, noticed that the defendant Wilson kept dropping his hands from the back rest. Both Officer King and the informer Joyce testified that when the car arrived at police headquarters Wilson dropped his hands to his boots, took from a boot a silver foil package and dropped it on the floor of the car. Officer King seized the package and found that it contained two smaller silver foil packages, each of which contained a white powder. The defendants were thoroughly searched at the headquarters and the $14 dollars in marked currency was found on Wilson. Nothing incriminating was found on Burks.

At the trial, a police chemist testified that the silver foil packages which were recovered by Officer King and the one which had been given to Joyce by the defendant Wilson contained heroin.

Burks did not testify at trial, but Wilson did take the witness stand. He admitted he was an addict but denied he made a sale to the informer, Roger Joyce. He testified that he and Burks were playing pool in the pool room at 47th Street and Calumet Avenue when Joyce entered and began watching their game. To explain his possession of the marked currency, he said that Joyce gave the $14 to Burks when he changed a $20 bill for Burks. Thereafter Burks

gave him the $14 in settlement of wagers he and Burks had made on two games of pool. Wilson further testified that when he and Burks left the pool room they were followed by Joyce, who remained about 20 feet behind them as they walked. He related that Joyce continued to follow them as they proceeded south on Calumet to 48th Street then west on 48th to Prairie and then north toward 47th Street until they were arrested at about 4711 South Prairie. Wilson testified that in the squad car he did not reach in the direction of his boots. He said that Officer King did pick up a package from the floor but he denied he had placed the package on the floor.

The defendants argue, in support of their position that the trial court improperly denied their motion to suppress the marked currency, that there was no probable cause to make the arrest and that, therefore, the arrests and searches were unlawful. The defendants say the police officers based the arrests solely on the uncorroborated statements of an informer who was an admitted drug addict. Information of this type, they contend, is not sufficient to provide the probable cause necessary to justify an arrest.

A search of a person without a search warrant is proper, and evidence obtained thereby is admissible, if the search is incident to a lawful arrest. (*People* v. *Durr,* 28 Ill.2d 308; *People* v. *Pitts,* 26 Ill.2d 395.) An arrest without a warrant of arrest, in turn, is proper if the officer has reasonable grounds for believing that the person to be arrested has committed a criminal offense. (*People* v. *Wright,* 42 Ill.2d 457; Ill. Rev. Stat. 1969, ch. 38, par. 107—2(c).) In *People* v. *Durr,* 28 Ill.2d 308, we held that such reasonable grounds may be furnished by an informer whose reliability has been previously established or is independently corroborated. (See also, *Draper* v. *United States,* 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329.) Here the informer Joyce had provided information to the police officers involved over a period of approximately five years. This assistance by Joyce

had produced many arrests and a number of convictions. The informer told the officers that he knew that Wilson was selling narcotics in the vicinity of 47th Street and Calumet Avenue and that he had purchased narcotic drugs from Wilson. We consider that the informer could be regarded as reliable. (*People* v. *Wright*, 42 Ill.2d 457; *People* v. *McCray*, 33 Ill.2d 66; *People* v. *Durr*, 28 Ill.2d 308.) After the informer left the squad car on his mission he reappeared on Prairie Avenue within seven minutes in the company of the defendants. He transmitted the pre-arranged signal which informed the officers that the sale had been made. When the officers halted the informer and the defendants, the informer gave Officer King a silver foil package containing the heroin. The record thus shows a carefully controlled purchase by an informer of known reliability and "it would be idle for us to say that reasonable men would not have acted similarly upon the information supplied in this case." (*People* v. *Redding*, 28 Ill.2d 305, 307.) Reasonable grounds for the arrest did exist and, consequently, the arrests and subsequent searches were lawful.

Considering the defendants' contention that they were not proved guilty beyond reasonable doubt, it is to be observed that generally the question of the guilt of an accused is for the jury's determination. Its judgment will not be set aside unless it is palpably contrary to the weight of the evidence or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt. (*People* v. *Sumner*, 43 Ill.2d 228; *People* v. *Nicholls*, 42 Ill.2d 91.) We judge that the evidence clearly established the guilt of the defendant Wilson. The controlled purchase by the informer has already been described. The informer's testimony was that the heroin had been given to him by Wilson. He and Officer King testified to the attempt of Wilson, after his arrest, to dispose of the other heroin in his possession. The evidence showed the marked funds were recovered by the police from his person. Not overlooking that the addict-informer's testimony was

to have been cautiously regarded (*People* v. *Norman,* 28 Ill.2d 77), we consider that there was adequate evidence on which the jury could found its determination of Wilson's guilt beyond a reasonable doubt.

However, we do not have the trust in the judgment of Burks' guilt which the law requires. The informer Joyce testified that both Burks and Wilson participated in the sale of narcotics to him. Joyce testified that at the time the sale was made, he gave the marked currency to Burks and Wilson then gave the heroin to him. He did not testify that Burks thereafter gave the marked money to Wilson. Though the record is not entirely clear on this, it appears from the testimony of one of the officers that the two officers had Wilson, Burks and the informer in their view from the time the sale was made, or very nearly. Neither officer, according to the record, witnessed a transfer of the currency from Burks to Wilson. The currency was found in Wilson's possession. No attempt was made by the prosecution to explain the seeming contradiction and there was no evidence even of an opportunity for the currency to have been passed by Burks to Wilson. In the light of this, sufficient confidence cannot be placed in the testimony of the informer so far as Burks is concerned. Putting aside what might be a cynical speculation, one must, viewing all of the circumstances, conclude that the evidence presented to demonstrate the guilt of Burks was so unsatisfactory as to warrant a reasonable doubt of his guilt.

Accordingly, the judgment of the circuit court of Cook County is affirmed as to Wilson; it is reversed as to Burks.

*Affirmed in part and reversed in part.*