THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
CLIFFORD HELMS, Defendant-Appellee.

First District (5th Division)   No. 78-107

Opinion filed December 29, 1978.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Joan S. Cherry, and Armand L. Andry, Assistant State's Attorneys, of counsel), for the People.

Serpico, Novelle, Dvorak & Navigato, Ltd., of Chicago (Robert A. Novelle, of counsel), for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

The State appeals pursuant to Supreme Court Rule 604(a)(1) (Ill. Rev. Stat. 1977, ch. 110A, par. 604(a)(1)) from an order granting defendant's motion to suppress evidence and quash his arrest entered on February 16, 1977. The sole issue on appeal is whether the police had probable cause to arrest and search the defendant without a warrant. We reverse. The pertinent facts follow.

The defendant was charged by information with the unlawful possession of a controlled substance in that he possessed less than 30 grams of heroin in violation of section 402(b) of the Illinois Controlled Substances Act. (Ill. Rev. Stat. 1975, ch. 56½, par. 1402(b).) Prior to trial, the defendant moved to suppress all evidence seized and all statements taken and to quash his arrest and the information charging him with the offense on the grounds of unlawful search and seizure. After a hearing, the trial court granted the defendant's motion and the State brought this appeal.

At the suppression hearing the defendant testified that on May 27, 1976, at about 8 p.m. he was a passenger in a car with Jo Marie Seabrook at the intersection of 130th and Torrence Avenue in Chicago. A train was blocking the intersection and they were waiting for it to pass. While they were waiting, some men ran up to their car with guns drawn. One of the men pulled the defendant from the car, put his hands on the roof and began to search him. The man found a cellophane bag containing a brown substance in a pocket on defendant's shirtsleeve. While he was being searched, defendant recognized one of the men as George Pfotenhauer, a Dolton police detective. Defendant stated that at no time did he attempt to reach for any weapon. The men did not identify themselves as police officers prior to pulling him out of the car nor did any of them wear uniforms. He was never shown an arrest or a search warrant.

Defendant remained at that intersection between 10 and 20 minutes but was not told that he was under arrest until he was taken to the Dolton police station. Miss Seabrook, the driver, received no traffic citation. While at the police station, two pocket knives were taken from him. Defendant claims he was allowed to leave the police station in return for

his promise to aid in solving a recent murder. He was not formally arrested until June 10, 1976.

David Palmer testified. He was an agent with the Illinois Bureau of Investigation assigned to drug cases. An informer had told him that he had been in defendant's residence about four times in the two-week period preceding May 25, 1976. On each occasion, defendant indicated to the informer that he would be purchasing heroin later in the evening. Each time the informer returned to defendant's residence and saw heroin on the kitchen table. The informer told Officer Palmer that defendant picked up the heroin at 70th and Clyde in Chicago, leaving his house at about 6:30 or 7 p.m. and returning about an hour and a half later. Once home, defendant would distribute the heroin very rapidly so that none remained in his residence. In addition, Palmer was informed that defendant did not have a valid driver's license and would usually pick up Jo Marie Seabrook to drive the return trip from 70th and Clyde.

Palmer had observed defendant's residence once on May 25, 1976, before the arrest on May 27. On May 27, Palmer first observed defendant's car parked in front of his house at about 6:45 p.m. Defendant then drove the car to another location where he picked up Jo Marie Seabrook. Palmer, accompanied by Detective Pfotenhauer of the Dolton police, followed the car to 7045 South Clyde Avenue where defendant and Seabrook entered the building. They remained in the building for a little over an hour. When they left the building, Seabrook drove the car. Palmer followed the car to 130th and Torrence, where he parked to the right rear of defendant's car. At that point, defendant and Seabrook began looking around in the direction of Palmer. Palmer and four other police officers then approached defendant's car, where Palmer announced, "I'm a police officer." Defendant then made a quick move for his right pants pocket. Palmer grabbed defendant's hand and felt an object inside his clothes, which was a pocket knife. Palmer than gave defendant his *Miranda* warnings and removed him from the vehicle. The subsequent search revealed a second pocket knife in defendant's left rear pocket and the packet of heroin.

On cross-examination, Palmer was questioned about his report of the investigation, particularly about the informer and the information he gave Palmer. Palmer testified that he had used the informer on four prior occasions, resulting in three arrests and three convictions. However, he could remember the name of only one of the cases.

Palmer said that on May 27, 1976, the informer told him that he had a conversation with defendant, wherein defendant told him he was going to pick up some heroin, that he would return in an hour and a half, and would sell it as soon as possible. At this time the informer also told Palmer

that defendant would first pick up Miss Seabrook so that she could drive on the return trip. However, this information about Miss Seabrook was not contained in Palmer's report of his conversations with the informer.

At the time of the arrest, there were five policemen and two unmarked cars. They had been waiting for the train about 10 minutes. When they approached the defendant's car, Palmer saw no guns drawn by the police.

At this point, the court commented:

"* * * It's a perfect kind of case to get a warrant on. I've signed many warrants based upon testimony like you've given, that you have a reliable informant who tells you that he's been in a certain address, that on three occasions he's seen the Defendant with heroin and that he's purchased it from him and that he believes that some will be there at a certain time and, therefore, police [*sic*] give me a warrant that I can go arrest the individual or a search warrant where a warrant would issue, and you could go and make a proper arrest."

The Assistant State's Attorney argued that Palmer was attempting to corroborate the informer's tip and gather more information when he was forced to stop his car in close proximity to the defendant's. Defendant began to look around and had ample opportunity to recognize Palmer or Detective Pfotenhauer, whom defendant knew. At that time, when it was apparent that defendant probably recognized one of the police officers, there was no opportunity to obtain a warrant.

The court responded to the Assistant State's Attorney's argument as follows:

"There was no opportunity at that time. The opportunity existed before that time. He got this information on May the 25th. He told him that on several occasions—the informant told him—that he had been there. It takes a half-hour to get a search warrant. He can get a search warrant and he can follow him exactly as he did with his search warrant.

* * *

The only time when you're excused under these circumstances from getting a search warrant is when there comes into play something called exigent circumstances, which means if you don't act as they did in the case you cited, a man would be gone, the evidence would be gone, the Defendant would be gone.

MR. ROSENDAHL [Assistant State's Attorney]: Well, Judge, in other words, this whole case is lost—

THE COURT: Excuse me, Mr. Rosendahl, but obviously if you've been made aware two days before you make the arrest that this is likely to occur, that it has occurred in the past, there are no

exigent circumstances which will occur which make it feasible for you to make an arrest without a warrant.

He had ample opportunity to get a warrant."

The trial judge sustained defendant's motions and this appeal follows. On appeal, the State argues that there was probable cause to arrest and search the defendant based on the information provided by a reliable informant and independently corroborated by police surveillance. Further, that the warrantless search was incident to a lawful arrest and justified by exigent circumstances.

OPINION

■■ ■ A warrantless search of a person is proper and the evidence discovered is admissible when the search is incident to a lawful arrest. (*People v. Wilson* (1970), 45 Ill. 2d 581, 262 N.E.2d 441; *People v. Durr* (1963), 28 Ill. 2d 308, 192 N.E.2d 379, *cert. denied* (1964), 376 U.S. 973, 12 L. Ed. 2d 87, 84 S. Ct. 1138.) A police officer may arrest a person without a warrant when he "has reasonable grounds to believe that the person is committing or has committed an offense." (Ill. Rev. Stat. 1975, ch. 38, par. 107—2(c); see also *People v. Wilson.*) For purposes of arrest, reasonable grounds and probable cause are synonymous. (*People v. Wright* (1974), 56 Ill. 2d 523, 309 N.E.2d 537.) The test for probable cause is "whether a reasonable and prudent man in possession of the knowledge which has come to the arresting officer would believe the person to be arrested is guilty of the crime; that it is something less than evidence that would result in conviction and may be founded on hearsay evidence; that it is based upon the factual and practical considerations of everyday life upon which reasonable and prudent men, not legal technicians, act." (*People v. Denham* (1968), 41 Ill. 2d 1, 5, 241 N.E.2d 415, *cert. denied,* (1969), 394 U.S. 1006, 22 L. Ed. 2d 784, 89 S. Ct. 1605; *People v. Macias* (1968), 39 Ill. 2d 208, 213, 234 N.E.2d 783, *cert. denied* (1969), 393 U.S. 1066, 21 L. Ed. 2d 709, 89 S. Ct. 721.) Although an uncorroborated tip by an unknown informer is insufficient for probable cause (*People v. Denham*), where the informer's reliability has been previously established or the tip is independently corroborated by other facts and circumstances, probable cause has been found to exist. *People v. Durr* (1963), 28 Ill. 2d 308, 192 N.E.2d 379, *cert. denied* (1964), 376 U.S. 973, 12 L. Ed. 2d 87, 84 S. Ct. 1138; *People v. McFadden* (1965), 32 Ill. 2d 101, 203 N.E.2d 888, *cert. denied* (1965), 382 U.S. 871, 15 L. Ed. 2d 110, 86 S. Ct. 94; see also *Draper v. United States* (1959), 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329.

Applying these principles to the present case, we find that the officers had reasonable grounds to believe the defendant possessed heroin and therefore could lawfully arrest him without a warrant. The informer had been used by the officers on four prior occasions resulting in three arrests

and three convictions. This would tend to establish the reliability of the informer, although not as conclusively as the greater number of convictions found sufficient in other cases. Here, however, the information given to the officers was independently corroborated by their observations over two days. All the details given by the informer were verified except that the defendant actually possessed the heroin.

The facts in this case are similar to those in *Draper v. United States* (1959), 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329. In *Draper*, Hereford, a "special agent," told Marsh, a Federal narcotics agent, that the defendant, Draper, had left for Chicago to secure some heroin and would return to Denver by train on September 8 or 9. The informer also gave the agent a detailed physical description of Draper, described his clothing and luggage, and stated that he "walked real fast." On the second morning, Marsh saw a man who matched the description and arrested him. The subsequent search revealed heroin. In discussing the existence of probable cause, the Supreme Court commented:

> "And surely, with every other bit of Hereford's information being thus personally verified, Marsh had 'reasonable grounds' to believe that the remaining unverified bit of Hereford's information—that Draper would have the heroin with him—was likewise true." 358 U.S. 307, 313, 3 L. Ed. 2d 327, 332, 79 S. Ct. 329.

Likewise, in the present case, the past reliability of the informer plus the independent verification of the information gave the police officers probable cause to believe that the defendant would be in possession of heroin on his return trip. The corroborated facts in *Draper* merely established the defendant's identity. In the present case the defendant's identity was already known. The corroborated facts established that he had gone to his supposed supply and that Miss Seabrook drove the car as she supposedly did after a purchase. These facts would tend to verify the fact that a purchase had been made and that defendant in fact possessed the heroin. There would be greater probable cause here than in *Draper* under the facts to lawfully arrest the defendant without a warrant. The fact that the officers might have had ample time to obtain a warrant does not affect the validity of the arrest. *People v. Oliver* (1976), 38 Ill. App. 3d 166, 347 N.E.2d 865; see *United States v. Watson* (1976), 423 U.S. 411, 46 L. Ed. 2d 598, 96 S. Ct. 820.

The next question is whether the events of May 27 constituted an arrest or whether the only arrest occurred on June 10. If defendant was not arrested on May 27, the evidence must be suppressed, since the search was not incident to an arrest, and there was no other justification for a warrantless search. Section 107—5(a) of the Code of Criminal Procedure of 1963 provides that "An arrest is made by an actual restraint of the person or by his submission to custody." (Ill. Rev. Stat. 1975, ch. 38, par.

107—5(a).) It has been held that an arrest involves three elements: (1) authority to arrest; (2) assertion of that authority with intention to effect an arrest; and (3) restraint of the person to be arrested. (*People v. Moore* (1977), 55 Ill. App. 3d 706, 371 N.E.2d 194; *People v. Lawson* (1976), 36 Ill. App. 3d 767, 345 N.E.2d 41.) In addition, the act relied on as constituting an arrest must have been so understood by the person arrested. *People v. Ussery* (1974), 24 Ill. App. 3d 864, 321 N.E.2d 718; *People v. Smith* (1971), 5 Ill. App. 3d 341, 275 N.E.2d 480.

■■ ■ Undoubtedly, the police officers had the authority to arrest defendant by reason of their office and the existence of probable cause. Officer Palmer testified that when he approached the car he announced, "I'm a police officer" and then gave the defendant his *Miranda* warnings. This is a clear assertion of authority and the warnings show that Palmer intended to take the defendant into custody and effect an arrest. It is also clear that defendant was restrained since by his own testimony he remained at the intersection for 10 or 20 minutes and then was taken to the Dolton Police Station. Defendant stated that on the trip to the station he was first told he was under arrest. However, it appears that defendant knew that he was under arrest and submitted to the arrest. Even if we conclude that defendant was not specifically told he was under arrest before the search, no formal declaration of arrest is necessary for a valid arrest to occur. (*People v. Robbins* (1977), 54 Ill. App. 3d 298, 369 N.E.2d 577; see *People v. Clark* (1956), 9 Ill. 2d 400, 137 N.E.2d 820, *overruled in part on other grounds in People v. Watkins* (1960), 19 Ill. 2d 11, 166 N.E.2d 433, *cert. denied* (1960), 364 U.S. 833, 5 L. Ed. 2d 59, 81 S. Ct. 57.) The failure to inform defendant that he was under arrest did not alter the fact that the arrest had occurred. In addition, the failure to charge defendant with the crime at the time of the first arrest does not affect the validity of the arrest. *People v. Clark*; *People v. Jones* (1977), 56 Ill. App. 3d 414, 371 N.E.2d 1093.

■■ A search without a warrant is reasonable if incident to a lawful arrest. (*People v. Robinson* (1976), 62 Ill. 2d 273, 342 N.E.2d 356; *People v. Wright* (1968), 41 Ill. 2d 170, 242 N.E.2d 180, *cert. denied* (1969), 395 U.S. 933, 23 L. Ed. 2d 448, 89 S. Ct. 1993; Ill. Rev. Stat. 1975, ch. 38, par. 108—1.) Once the defendant was under arrest, the subsequent search was proper and the evidence discovered was admissible. Admittedly, it is difficult to isolate a single instant when the arrest was complete and the search was clearly incident to the arrest. However, in the arrest-search area, where the two events are almost simultaneous, the two should be viewed as a single transaction. (*People v. Jones* (1977), 56 Ill. App. 3d 414, 371 N.E.2d 1093; see *People v. Wiseman* (1974), 59 Ill. 2d 45, 319 N.E.2d 225; *Holt v. Simpson* (7th Cir. 1965), 340 F.2d 853.) Viewed as a whole, the search was incident to the arrest and was therefore proper.

The comments of the trial judge show that he agreed that sufficient probable cause and opportunity existed to secure a search warrant. He erred in concluding that a search warrant was necessary since there were no exigent circumstances to justify a warrantless search. As already discussed, the warrantless search was proper because it was incident to a lawful arrest and no warrant was necessary.

For the foregoing reasons, the order of the circuit court is reversed and the cause remanded for further proceedings.

Reversed and remanded.

SULLIVAN, P. J., and WILSON, J., concur.