THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
VERNON T. BROWN, Defendant-Appellee.

Third District   No. 79-317

Opinion filed February 25, 1980.

Michael M. Mihm, State's Attorney, of Peoria (John X. Breslin and Gerry R. Arnold, both of State's Attorney's Appellate Service Commission, of counsel), for the People.

Robert Agostinelli and Karen S. Szpajer, both of State Appellate Defender's Office, of Ottawa, for appellee.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

This is an appeal by the People of the State of Illinois from the order of the trial court suppressing evidence seized from the person of the defendant, Vernon T. Brown. Initially, the trial court denied the motion to suppress, but on reconsideration, the motion was granted, the trial court finding that there was no arrest of the defendant in the time span covered by the evidence presented, that having a defendant assume a search position on the squad car was not an arrest, that there was no search prior to arrest made for the purpose of ensuring the police officer's safety, and that the police officer lacked the intent to make an arrest without regard to whether contraband turned up as a result of the search. In addition, the trial court expressly stated its disbelief in the police officer's testimony that his intention in going to the area in which the defendant had been seen was to arrest the defendant since the police officer had previously testified that he went to the location to investigate the information supplied to him.

At the hearing on the motion to suppress, the defendant testified that on or about August 10, 1978, at approximately 1 o'clock in the afternoon, he was at or near the 700 block of West McBean in Peoria when he was stopped and searched by the police. The defendant further testified that no warrant was produced, that he was not arrested or placed in custody prior to the search and that he did not consent to the search. On cross-examination, the defendant stated that he did not know Officer Hurt was a police officer when he approached him.

Officer Charles Hurt of the Peoria police department was the sole witness for the State at the hearing. He testified that on August 10, 1978, at approximately 1:15 p.m., he received a phone call from a confidential source who informed him that the defendant was at that moment on McBean Street, across from Martin Luther King Park in a small, yellow car, possibly of Japanese make. In describing the defendant's appearance, the confidential source stated that the defendant was wearing a light colored top or jacket, blue jeans, and sunglasses. According to the source, the defendant had shown the confidential informant a clear plastic bag with a number of small tinfoil packets and represented the contents of the packets to be heroin. The defendant told the confidential informant that he was attempting to sell the heroin to people in the area.

Prior to August 10, Officer Hurt's confidential source had provided him with information on four other occasions. On three of those times the officer had obtained laboratory-verified heroin, and on the other occasion

the source gave information which led to an armed robbery indictment based upon the victim's positive identification of the suspect. The confidential informant had provided his information over a period of two to three months and had never given the officer unreliable information.

After receiving the information regarding the instant defendant, the officer and his partner obtained an unmarked police car and proceeded to the location identified by the source to investigate the information provided. Upon arriving, the officers saw a yellow Toyota car parked on McBean Street. Officer Hurt, who was previously acquainted with the defendant, recognized the defendant, who was about 75 feet from the car and walking towards it. The officers stopped their car, approached the defendant, called him by name, identified themselves as police officers, and ordered him to assume the search position on their squad car. As the officers approached him, the defendant reached into his back pocket, and the officers ordered him to remove his hand from his pocket.

The officers then searched the defendant and discovered a clear plastic bag containing nine tinfoil packets in his left rear pocket and a small envelope containing a green leafy substance in his right rear pocket. The defendant was wearing a light colored waist jacket, blue denim trousers, and sunglasses. From the time the officer received the information from his source to the stop of the defendant on the street consumed about 15 minutes, and his purpose in going to the location identified by the informant was "* * * to see if a black male known to us as Vernon Brown was in the area and arrest him for the possession of a controlled substance."

In seeking a reversal of the order of the trial court, the State argues that the search of the defendant was incident to his arrest, which was proper even though no warrant was issued since the arresting officer had probable cause to believe that the person arrested had committed a criminal offense. The crux of the problem, then, is to determine whether an arrest had in fact been made at the time of the search. Only if it is determined that an arrest had been made need a discussion of whether it was lawful be presented.

■■ The trial judge found that no arrest had been made prior to the search. "It is axiomatic that an incident search may not precede an arrest and serve as part of its justification." (*Sibron v. New York* (1968), 392 U.S. 40, 63, 20 L. Ed. 2d 917, 934-35, 88 S. Ct. 1889, 1902.) Where the objectionable evidence is obtained as a result of a search of the defendant's home, the test of determining whether the search was incident to an arrest appears to be whether the purpose of the entry by the law enforcement agent was to seek out contraband or to make an arrest (*Jones v. United States* (1958), 357 U.S. 493, 2 L. Ed. 2d 1514, 78 S. Ct. 1253). Even though there may have been probable cause to make the

arrest aside from the evidence secured in the search, the search cannot be considered incident to a lawful arrest if the evidence established that the defendant was arrested only because of the evidence found in the search and the defendant's residence was entered only for the purpose of making the search. *People v. Cox* (1971), 49 Ill. 2d 245, 274 N.E.2d 45.

■■ However, the search of the person of the defendant is somewhat different in that some control over the defendant must be exerted to effectuate the search. An arrest is distinguishable from other police activity having been defined as including three elements: (1) The person making the arrest must have had the authority to do so; (2) there must have been an assertion of that authority with the intention to effect an arrest; (3) and there must be restraint of the person involved. (*People v. Ussery* (1974), 24 Ill. App. 3d 864, 321 N.E.2d 718.) No formal declaration of arrest is necessary for an arrest to occur. (*People v. Helms* (1978), 67 Ill. App. 3d 729, 385 N.E.2d 127.) However, the absence of such a declaration is a factor to consider in determining the officer's intent and whether a reasonable person, innocent of any crime, would have believed himself or herself to be under arrest in the given circumstances. So is the search of, or the failure to search, the defendant (*People v. Gale* (1979), 72 Ill. App. 3d 23, 390 N.E.2d 921), since that is a procedure customarily associated with an arrest.

It was specifically found by the trial court, because of the inconsistent testimony of Officer Hurt, that, at the time of the search, Officer Hurt was not asserting his authority to make an arrest with the intent to do so and, instead, intended not to assert that authority unless contraband was uncovered as a result of the search. At a hearing on a motion to suppress, it is the function of the trial court to resolve conflicts in the testimony and to assess the credibility of the witnesses (*People v. Clay* (1973), 55 Ill. 2d 501, 304 N.E.2d 280), and it has been recognized that a police officer's declaration of intent at a hearing may be self-serving and, therefore, a court should look to the acts of the participants to ascertain the officer's intent. (*In re Foster* (1978), 66 Ill. App. 3d 193, 383 N.E.2d 755.) Once a trial court has ruled on the motion to suppress, a reviewing court will not disturb that order unless it is manifestly erroneous. See *People v. Williams* (1974), 57 Ill. 2d 239, 311 N.E.2d 681.

Here, the ruling was manifestly erroneous. The police officers approached the defendant, identifying themselves as police officers, ordered the defendant to assume a search position on the squad car and proceeded to search the defendant. The police, in the instant case, had the authority to make the arrest, asserted that authority and restrained the defendant. While the officers did not declare that the defendant was under arrest, this does not negate the fact that all other actions by the

·police were consistent with the explanation that the defendant was being arrested.

The defendant argues that another test to determine whether an arrest has been made is whether a reasonable person, innocent of any crime, would have thought he had been arrested had he been in the defendant's position. While this standard does apply to a determination of whether a defendant was in such a custodial situation as to require *Miranda* warnings to ensure the voluntariness of any incriminating statement (*People v. Wipfler* (1977), 68 Ill. 2d 158, 368 N.E.2d 870), it is irrelevant to the question of whether the defendant was, in fact, arrested.

■■ ■ Somewhat related to the question of whether the defendant had been arrested prior to the search is whether the arresting officer had probable cause to make the arrest in the first place. As has been stated so concisely by the Illinois Supreme Court:

> "A search of a person without a search warrant is proper, and evidence obtained thereby is admissible, if the search is incident to a lawful arrest. (*People v. Durr*, 28 Ill. 2d 308, 192 N.E.2d 379; *People v. Pitts*, 26 Ill. 2d 395, 186 N.E.2d 357.) An arrest without a warrant of arrest, in turn, is proper if the officer has reasonable grounds for believing that the person to be arrested has committed a criminal offense. (*People v. Wright*, 42 Ill. 2d 457, 248 N.E.2d 78; Ill. Rev. Stat. 1969, ch. 38, par. 107—2(c)). In *People v. Durr*, 28 Ill. 2d 308, 192 N.E.2d 379, we held that such reasonable grounds may be furnished by an informer whose reliability has been previously established or is independently corroborated." (*People v. Wilson* (1970), 45 Ill. 2d 581, 585, 262 N.E.2d 441, 443.)

The informer's reliability may be established on the basis of the accuracy of information he has previously supplied. See *People v. Thomas* (1974), 24 Ill. App. 3d 932, 321 N.E.2d 696.

■ In the present case, the informer's reliability was established by the accuracy of the information previously supplied. Therefore, there existed probable cause to make an arrest, an arrest was made and a search of the defendant's person was made incident to the arrest. The evidence obtained as a result of that search should not have been suppressed.

Accordingly, the order of the Circuit Court of Peoria County suppressing the evidence is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

BARRY and SCOTT, JJ., concur.