(No. 43371.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. PENELOPE COX, Appellant.

*Opinion filed September 30, 1971.*

FLEMING & McGREW, of Watseka, (MILO J. FLEMING and DWIGHT W. McGREW, of counsel,) for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and RONALD E. BOYER, State's Attorney, of Watseka, (THOMAS J. IMMEL, Assistant Attorney General, of counsel,) for the People.

MR. JUSTICE RYAN delivered the opinion of the court:

The defendant, Penelope Cox, was convicted by a jury in the circuit court of Iroquois County for unlawful possession of a narcotic drug, marijuana, and unlawfully dispensing a narcotic drug, marijuana. The trial court sentenced the defendant to a term of two to five years on the first charge and a term of ten to twenty years on the second charge, both sentences to run concurrently.

Prior to trial, defendant filed a motion to suppress evidence, alleging defects in the search warrant. At the hearing on this motion a deputy sheriff testified that he had been informed by two employees at the Post House Restaurant, located south of the village of Gilman, where defendant was employed, that a substance which had the appearance of marijuana was found. The deputy also testified that he was advised by an employee of the restaurant that there was to be a party in the restaurant on September 5, 1969, and that the defendant and two boys had been seen drying some green leafy material in an oven at the restaurant. Based upon this information the sheriff of Iroquois County signed a verified complaint for a search warrant on September 5, 1969, requesting a search of the restaurant and a search warrant issued for the defendant, the restaurant and the residence of defendant.

The deputy further testified at the hearing on the motion to suppress that the restaurant and defendant's home were staked out by police officers on September 5 and 6. On the night of September 6 he observed several unidentified persons entering the restaurant. A good deal of movement was observed by the deputy inside the restaurant. The automobile which had brought the persons to the restaurant then left the premises, was followed by the deputy, and was driven to the defendant's residence. The deputy stayed at the defendant's residence until 3 A.M. September 7, but seeing nothing unusual, went to his own home. At 6:35 A.M. he was directed to return to the

restaurant. Upon his arrival there he was met by other officers and several restaurant employees. The restaurant was found to be in a state of disarray and he observed evidence of a fire and pieces of material which he testified appeared to be marijuana. Thereafter he returned to the defendant's residence and found the automobile which he had observed at 3:00 A.M. to be in the same place as it was when he had previously left.

He and a police officer knocked on the door of the defendant's residence. When the defendant came to the door he informed her that he had a search warrant in his possession. At this time, however, the officers did not enter the premises but waited for the arrival of the wife of another deputy sheriff who was a matron for the sheriff's office. The matron arrived a few minutes later. The officers again knocked at the door and at this time entered the building. They began searching the premises and discovered a plastic bag of material resembling marijuana in the toilet. They also found four teen-aged persons in the bedroom.

The deputy further testified that when he initially arrived at the defendant's residence he informed her that he was a police officer and was there to search the premises. Nothing was mentioned at that time as to the defendant being under arrest. According to the deputy no arrests were made until after the search was completed and the bag of substance believed to be marijuana was discovered. He further testified that when he arrived at the defendant's home there was nothing to lead him to believe that a crime had been, or was being, committed, or that there was marijuana inside the defendant's home. He further testified that at the time he went to defendant's home to make the search he still had not decided as to whether or not he would arrest the defendant. In fact he stated: "If you don't have the evidence which we was seeking you can't——[arrest]. I found the evidence I was seeking and I arrested them."

The trial court ruled that the search warrant was invalid and ordered the same quashed. However, the trial court further ordered that the evidence obtained as a result of the search of the defendant's home was admissible as having been obtained pursuant to a valid arrest. The trial court further found that there was probable cause for arrest, the arrest was valid and that a search incident to a valid arrest was proper.

At the close of the State's case defendant again moved to strike all testimony and exhibits for the reason that they arose from, and were the natural result of, an illegal, warrantless search and seizure in violation of defendant's constitutional rights. The court denied the motion.

The defendant contends that the evidence seized during the search of her home was erroneously admitted into evidence and we agree.

The State attempts to justify the seizure as being incident to a lawful arrest. This court has previously held that defects in a search warrant are immaterial if the search can be otherwise justified and we have held that a reasonable search incident to a lawful arrest is justified. *(People v. Williams, 36 Ill.2d 505; People v. Brinn, 32 Ill.2d 232, 241.)* However the facts in this case do not support the State's position.

The facts in the present case are strikingly similar to those in *Jones v. United States, 357 U.S. 493, 2 L.Ed.2d 1514, 78 S.Ct. 1253.* In that case the officers had an invalid search warrant. A search of a residence was made and as a result of the search certain evidence was seized and arrest was subsequently made. The government contended that the search and seizure were justified as incident to the arrest. The court held that the record failed to support the theory advanced by the government because the testimony of the officers made clear that their purpose in entering the residence was to search and not to arrest the defendant.

The portion of the deputy's testimony quoted above

clearly indicates that he and the other officers entered the defendant's house only for the purpose of making a search and that the defendant was arrested only because of the evidence found during the search. If they would have found no evidence of a violation of the law they would not have arrested the defendant. Under these circumstances we conclude that although the deputy may have had probable cause to arrest the defendant aside from the evidence secured in the search, the search nonetheless for the reasons above stated was not incident to a lawful arrest.

We also do not believe that the evidence supports the State's contention that the search was required to prevent the destruction of the evidence. This is not a case where the officers burst into the house and dashed into the bathroom to prevent the evidence from being flushed down the toilet. This was a situation where there was almost a leisurely search. The deputy had knocked on the defendant's door and informed her that he had a search warrant but he did not enter the premises for several minutes waiting for another employee of the sheriff's department to arrive. This delay contradicts the claim of the necessity of an immediate search to prevent the destruction of the evidence.

The judgment of the circuit court of Iroquois County will accordingly be reversed.

*Judgment reversed.*