THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GREGORY GROGAN *et al.*, Defendants-Appellants.

Second District   Nos. 77-256, 77-260 cons.

Opinion filed August 28, 1978.

Mary Robinson and Rosetta Hillary, both of State Appellate Defender's Office, of
Elgin, for appellants.

Dennis Ryan, State's Attorney, of Waukegan (Phyllis J. Perko and Jan
Tuckerman, both of Illinois State's Attorneys Association, of counsel), for the
People.

Mr. JUSTICE GUILD delivered the opinion of the court:
This is a consolidated appeal by a husband and wife from their
convictions for the theft of two wrought iron lawn chairs worth less than
$150, in violation of section 16—1(a)(1) of the Criminal Code of 1961 (Ill.
Rev. Stat. 1975, ch. 38, par. 16—1(a)(1)).
The defendants have presented two issues to this court. They contend
first that certain evidence against them should have been suppressed as the
product of an improper search, and second, that neither they nor their
attorney understandingly waived their right to trial by jury, as required by
section 103—6 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat.
1975, ch. 38, par. 103—6).
Both of the defendants filed a pretrial motion to suppress evidence
unlawfully seized, being the chairs they were accused of stealing. At the
hearing on the defendants' motions, Waukegan police officer Anthony
Mead testified that at about midnight on April 7, 1976, he responded to a
theft complaint. Three citizens informed him that two individuals driving
in a white-over-red Ford automobile, 1976 license No. 332 047, had taken
two wrought-iron lawn chairs from the Imperial Manor apartments. While
on patrol at approximately 5 that same morning, Officer Mead

observed a white-over-red Ford with 1976 license No. 332 047 parked in the defendants' driveway. Corporal Halvorsen responded to Officer Mead's call for assistance and together they visually examined the defendants' backyard from the adjoining property, but saw nothing. At this point Officer Mead observed a shed attached to the defendants' house with the door ajar, leaving a 2½-inch gap. He then went upon the defendants' property, and shining his flashlight through the gap, observed the two wrought iron lawn chairs therein.

· The officers were joined by Lieutenant Curtis Christian who, after being apprised of the circumstances and viewing the chairs in the shed, confronted the defendants. He testified that he was met at the front door by Paula Grogan and that he told her of the theft report, the fact that the car described by the witnesses was in her driveway, and that the stolen chairs were in her shed. She accompanied the officers to the shed, unlatched it, and denied possession or knowledge of the chairs that were within. Lieutenant Christian stated that Gregory Grogan was awakened at this point and was also confronted with the description of the car and the possession of the chairs. Lieutenant Christian then asked the defendants to drive to the station where the situation could be resolved, which they did.

Gregory Grogan testified at the hearing, stating that he and his wife had the exclusive use of the property, including the shed, by virtue of both their lease and the permission of their landlord. Grogan stated that the shed door, if latched or locked, did not leave any gap at all unless it was pulled out. Paula Grogan testified, stating that Lieutenant Christian asked her to accompany him outside and that upon arriving at the shed its door was completely closed and Lieutenant Christian asked her to open it. Both defendants testified that they later made incriminating statements to detectives at the police station.

The trial court denied the defendants' motions to suppress, holding that the exact description of the car which was found on the defendants' premises obliged the officers to make an arrest and gave them at least the right to search the premises incident to that arrest.

At a bench trial on September 7, 1976, the parties stipulated as to the ownership of the wrought-iron chairs, and that the testimony of the police officers would be the same as given at the motion to suppress. The eyewitnesses to the theft were not called to testify, nor was their testimony stipulated to by the parties. Neither the chairs themselves nor the allegedly incriminating statements made by the defendants were introduced into evidence. Also, no testimony was given or stipulated to which described the circumstances under which the alleged statements made by the defendants were given.

An examination of the record fails to disclose that the defendants or

their attorney waived the jury trial which they had earlier demanded. The record also does not reflect that the court made any effort to ascertain whether the defendants were voluntarily waiving that right.

The trial court, upon the conclusion of the motion to suppress, held that the examination of the shed of the defendants was essentially a search incident to an arrest, a circumstance which is one of the recognized exceptions to the unreasonableness of such a search. Upon the stipulation to the evidence at the bench trial, the trial court obviously adopted that reasoning. We cannot agree.

■ ■ The law is clear that "[i]t is axiomatic that an incident search may not precede an arrest and serve as part of its justification." (*Sibron v. New York* (1968), 392 U.S. 40, 63, 20 L. Ed. 2d 917, 934-35, 88 S. Ct. 1889.) It is undisputed that the actual arrest of these defendants did not occur on the premises but several hours later at the police station. Another factor, while not controlling, should be considered. Nowhere in his testimony did Officer Mead state that he had looked into the shed with the intent of making an arrest. To the contrary, it is clear that his intent was to discover whether any evidence of the theft was hidden within the shed. This is clearly improper. (See *People v. Cox* (1971), 49 Ill. 2d 245, 274 N.E.2d 45.) The facts as contained in the record do not reveal any exigent circumstances such as hot pursuit, the protection of the life of another, or the probability of removal or destruction of evidence which may have justified an immediate warrantless examination of the premises. While probable cause existed to obtain a warrant, such probable cause without more justification does not allow warrantless entry.

Accordingly, we must hold that the motion to suppress should have been granted as to discovery of the lawn chairs. However, the statements made by the defendants pose quite a different problem. Those statements, and the circumstances under which they were made, are not a part of the record before us. The question of whether or not they too should be suppressed must be decided by the trial court.

Due to the result we reach herein, we need not pass upon the issue of waiver of trial by jury. Upon remand the trial court will no doubt insure that a clear and intelligent waiver is obtained from each defendant before a bench trial is conducted.

Reversed and remanded with instructions.

SEIDENFELD, P. J., and BOYLE, J., concur.