THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
ROGER THOMAS *et al.*, Defendants-Appellees.

Second District   No. 78-371

Opinion filed August 23, 1979.

Phyllis J. Perko and Jan Tuckerman, both of State's Attorneys Appellate Service Commission, of Elgin, for the People.

Mary Robinson, of State Appellate Defender's Office, of Elgin, for appellees.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The State appeals from an order suppressing cannabis which was seized following a traffic stop. The State contends that the initial stop was valid because the driver of the vehicle committed several traffic violations; that after the stop the officer observed open beer cans in plain view; and that defendants were then arrested, with the marijuana being discovered in the search incidental to the arrest. The defendants contend that the trial judge did not find that the officer's testimony as to the violations was credible; that the record shows that the stop was made on mere suspicion; and that the subsequent search cannot be justified as one incidental to a valid arrest.

The St. Charles police stopped the defendants' vehicle in the downtown area of the city at approximately 1 a.m. on March 1, 1978. Officer Parker testified on direct examination that he was headed west on the main street when he noticed two males on the right hand side of the road in a car parked at the curb. Both men were seated on the passenger side. He said that both looked at him as he drove by. The officer said he drove away, intending to make a U-turn and come back on the same street.

He had not yet completed the turn when he observed the defendants' car heading west.

According to the officer he saw the car make a quick unsignaled turn and he stopped the car within a short distance. The officer testified that upon stopping the car the driver jumped out and the officer asked him for his driver's license. He said he then took his flashlight, looked in the interior of the car and observed several beer cans in the back seat. On cross-examination he said that some of them were open. At that time the driver gave Parker his license and gave no valid reason for the presence of the beer cans. Parker then asked that the car be pulled up to enable him to talk to the passenger. Parker observed the passenger on the right hand side of the seat with both legs together and his hands at either side of both legs, leading him to believe that the man was trying to hide something. Parker went around the passenger side to talk to the passenger and noticed that the passenger had shifted his legs in order to conceal the view. The officer requested that the man get out of the car and then noted that the passenger had been attempting to hide a bottle of wine. When the passenger did get out of the car Parker checked the interior, found and seized two knives, a box of .22 rifle ammunition in the glove box, and a large quantity of a plant substance from underneath the passenger side of the front seat. This was later determined to be 100.73 grams of cannabis. Parker further testified that at this time he told the defendants they were under arrest. After the arrest another officer who had arrived at the scene advised Parker that he believed one of the defendants had dropped something on the ground and a plastic bag was there found containing an additional amount of cannabis under the left rear corner of the vehicle.

A number of discrepancies in Parker's testimony were brought out on cross-examination. Although the officer had said nothing about speeding violations in his direct testimony, on cross-examination he said that he observed the defendants' vehicle traveling at the rate of 35 to 40 miles per hour in a 25 mile-per-hour zone; but he observed this without the use of any clocking device. Parker testified that he had asked the driver for his license as soon as the driver alighted from the car and as they met at the rear of the driver's door; but answered on cross-examination that he requested the driver's license after he had viewed the beer cans on the floor of the car. Parker also stated that he checked the car's registration at the scene but then changed his testimony and stated that he ran a registration check later on at the police department. The officer had no explanation as to why he could not speak to the passenger through the driver's window rather than going to the other side. Nor did he explain why he did not issue citations for the alleged speeding and turn signal violations.

While the above testimony was at the preliminary hearing, all the

parties agreed to allow the court to rule on the suppression motion based upon a reading of the transcript of that hearing. The court concluded after reading the transcript that initially the officer proceeded on mere suspicion to follow the car; that when he observed a traffic violation he made a plain-view observation of the beer cans but that the mere presence of beer cans without further evidence (*i.e.*, of the content of alcohol) did not violate any law. The court further concluded that the further search by the officer was not conducted subject to a lawful arrest. The suppression order from which the appeal is taken followed.

The trial judge found as facts that the search was based upon mere suspicion and that there was no probable cause to believe that the defendants were engaged in the illegal transportation of liquor. The trial judge was, of course, permitted to resolve conflicts in the evidence on the basis of the credibility of the testimony. (See, *e.g., People v. James*, 44 Ill. App. 3d 300, 305 (1976); *People v. Creed*, 34 Ill. App. 3d 282, 286 (1975). See also *People v. Riggs*, 62 Ill. App. 3d 338, 339 (1978).) Omissions, discrepancies and improbabilities in the testimony of a witness may impeach the testimony of that witness. *People v. Scott*, 345 Ill. App. 73, 81 (1951).

Here, the trial judge could give credibility to the officer's statement that there were minor traffic violations but still conclude from the testimony that the officer was proceeding on a hunch or suspicion which was formed when he first passed the parked automobile, but which did not amount to probable cause for the officer to believe that any criminal activity had taken place or was taking place. Of course, once the car was stopped the officer had a right to look into its open interior to see that which was in plain view. (See *People v. Nally*, 71 Ill. App. 3d 238 (1979).) However, the court could also conclude that the fact that the officer testified that he saw beer cans in the car did not give the officer probable cause to make a further search in absence of any evidence that there was any open liquor in the car, in violation of the Motor Vehicle Act (Ill. Rev. Stat. 1977, ch. 95½, par. 11—502) proscribing the transporting, not of liquor containers, but of alcoholic liquor except original, sealed packages. This conclusion is fortified by the fact that the officer did not take the cans into custody, and gave no substantive details as to the items. Further, there was no circumstantial proof of any signs of intoxication. Compare, *e.g., People v. Holze*, 55 Ill. App. 3d 155, 160 (1977).

■■ Findings of fact by the trial judge are not to be disturbed unless againt the manifest weight of the evidence. (*People v. Medina*, 71 Ill. 2d 254, 258 (1978).) Here, the trial court could properly find from the evidence that there was no probable cause to arrest the defendants and to further search the vehicle.

494

■■■ We have recently reaffirmed the principle that "an incident search may not precede an arrest and serve as part of its justification." (*People v. Grogan*, 63 Ill. App. 3d 711, 713 (1978).) An officer's authority to investigate a traffic violation may not become a subterfuge to obtain other evidence based on suspicion. *People v. Lichtenheld*, 44 Ill. App. 3d 647, 649 (1976).

The judgment of the trial court is affirmed.

Affirmed.

GUILD, P. J., and WOODWARD, J., concur.