THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* CLAY WATTS, Defendant-Appellee.

Fifth District    No. 80-101

Opinion filed February 20, 1981.

William G. Schwartz, State's Attorney, of Murphysboro (Martin N. Ashley and Stephen E. Norris, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

John H. Reid, of State Appellate Defender's Office, of Mt. Vernon, and Brian Lewis, law student, for appellee.

Mr. JUSTICE WHITE delivered the opinion of the court:

The defendant was charged by information with unlawful possession of cannabis in that on September 2, 1979, he knowingly possessed more than 500 grams of a substance containing cannabis (Ill. Rev. Stat. 1977, ch. 56½, par. 704(e)). A preliminary hearing was held and probable cause found. Subsequently, a motion to quash arrest and suppress evidence was filed by the defendant, evidence was heard and the motion to suppress evidence was allowed. The People appeal.

It was stipulated at the hearing on the defendant's motion to quash arrest and suppress evidence that the search and seizure were without a search warrant. The state then called Officer Ralph Pearce, Southern Illinois Security Police, as a witness. He testified that on September 2, 1979, at approximately 2:50 a.m., he was traveling north on South Illinois Avenue in Carbondale, Illinois, where he observed a 1949 Chevrolet pickup truck traveling east on old Hospital drive. His attention was called to the truck "because of the noise the truck was making, and the excessive speed." The truck then cut across the Dairy Queen parking lot, turned

right onto Cherry Street, and then turned north from Cherry onto South Illinois Avenue. The officer continued to observe the pickup for several blocks because he was "suspicious" of the vehicle and decided to follow it. After following for approximately four blocks, the officer stopped the vehicle for an alleged speeding violation. The officer testified that he had clocked the vehicle in question and at one point it was going 46 miles per hour in a 30-mile-per-hour speed zone.

Both the officer and the defendant got out of their vehicles and the defendant showed the officer a valid driver's license. A second officer arrived and watched the defendant at the police car as the arresting officer approached the defendant's vehicle. Officer Pearce testified that he could smell beer on the defendant's breath; however, according to the officers, the defendant was not intoxicated nor was he given a ticket for "D.W.I.," nor was he requested to undergo a breathalyzer analysis.

According to Officer Pearce, as he approached the defendant's vehicle, the driver's door was open, he looked in with the aid of a flashlight and saw a six-pack container of Miller's beer with two bottles in the original carton, in the middle of the floor of the truck. At that time the officer had no knowledge of whether the bottles were capped or uncapped or whether there was any alcoholic beverage in the bottles. He could not see the top of the bottles because of the carton in which the bottles were situated. The officer then entered the truck to examine the bottles, at which time he noticed the odor of cannabis. He found the bottles to be capped but also observed what he believed to be a marijuana leaf on the floor. As he moved the carton containing the beer bottles, he observed a wooden box next to the beer carton. The lid of the box was open approximately an inch, and the officer testified he was able to observe a plastic bag with the green leafy substance by using his flashlight and peering through the one-inch opening. Immediately thereafter, he arrested the defendant. The officer had the defendant's vehicle towed, inventoried and secured. During the inventory of the vehicle, the officer noticed a space in front of the bench-type seat. With the use of his flashlight, he could observe objects under the seat by getting down and looking through the space. He lifted the bench-type seat in the cab of the pick-up truck and found another plastic bag containing several more plastic bags, some of which contained leafy materials. He also found a small cardboard box containing more plastic bags with leafy material and one plastic bag full of brown seeds.

The defendant testified in his own behalf that he was at a party in a house behind the Dairy Queen, that he had left the house after 2 a.m. and that as he approached his vehicle there were individuals sitting on and in the truck drinking beer. After he advised them to leave, he threw out the empty bottles of beer but left two unopened Miller bottles inside the

six-pack container on the passenger side on the floor. The defendant drove across the parking lot to Cherry Street and then turned north onto South Illinois Avenue. He drove one block, stopped at a stop light, then drove at a speed not greater than 25 miles per hour until he was stopped by Officer Pearce four blocks later. Defendant further testified because of the construction on South Illinois Avenue he had to change lanes to proceed north. According to defendant, after he was stopped, he got out of his vehicle, closed the door, showed the officer his valid driver's license and was detained by a second officer in front of the police car while Officer Pearce placed the upper portion of his body into the driver's window of the defendant's vehicle. Officer Pearce then walked around to the passenger side, opened up the door, entered, got out, and then placed the defendant under arrest. The defendant never gave permission to, nor was asked for, permission by the officer to enter the vehicle. The defendant's vehicle was towed and inventoried without his permission. The defendant admitted that he consumed one beer at the party in a period of 2½ to 3 hours.

The trial court found that the officer had probable cause to stop the defendant's vehicle, that the officer had the right to approach the vehicle, and that the officer could look into the vehicle from outside, but the court further found that the officer could not enter the automobile in absence of any evidence that there was a violation of any law, and in particular, a violation of section 11—502 of the Illinois Vehicle Code (Ill. Rev. Stat. 1977, ch. 95½, par. 11—502), which states, "no person shall transport, carry, possess or have any alcoholic liquor within the passenger area of any motor vehicle except in the original package and with the seal unbroken."

The trial judge based his ruling upon *People v. Thomas* (1979), 75 Ill. App. 3d 491. He specifically found that the factual basis in this case was controlled by the *Thomas* case. We disagree. In *Thomas* the arresting officer first noticed the defendants in a parked car. As he drove by, the defendants looked at him, the officer drove on down the road and was in the process of making a U-turn when he observed the defendants' car heading west. He followed the defendants' car and observed them make a quick unsignalled turn. He then stopped the car and the driver jumped out. The officer asked him for his driver's license. The officer then took his flashlight, looked in the interior of the automobile and saw several beer cans in the back seat, some of which were open. The officer then went on the other side of the car to talk to the passenger. He noticed that the passenger had shifted his legs in order to conceal the view. He asked the passenger to get out of the car. As the passenger was getting out of the car, he saw the passenger had been attempting to hide a bottle of wine. He then made a further search of the automobile and found two knives, a

box of .22 rifle ammunition, and a large quantity of plant substance underneath the passenger side of the front seat. The trial court allowed the defendants' motion to suppress the evidence. It concluded that initially the officer proceeded on mere suspicion to follow the car; then when he observed the traffic violation, after stopping the motor vehicle, he made a plain-view observation of the beer cans, but the mere presence of beer cans without further evidence did not violate any law. The court concluded that the further search by the officer was not conducted subject to a lawful arrest.

The appellate court, in affirming, applied the manifest weight of the evidence doctrine and refused to disturb the findings of the trial court. The court further stated, "However, the trial court could also conclude that the fact that the officer saw the beer cans in the car did not give the officer probable cause to make the further search in absence of any evidence that there was any open liquor in the car in violation of the Motor Vehicle Act, (Ill. Rev. Stat. 1977, Chap. 95½, Para. 11—502) proscribing the transportation, not of liquid containers but of alcoholic liquor except original, sealed packages." Since *Thomas*, the legislature has amended the aforementioned section of the Motor Vehicle Act and "container" was substituted for "package." Pub. Act 80-1463, eff. Jan. 1, 1979.

The case before this court has several additional elements not found in *Thomas*. The arresting officer testified that he first observed the motor vehicle in question because of the loud noise it was making at the time immediately after the closing of the taverns in Carbondale. He further testified that this time of the morning they have a lot of intoxicated drivers, "half an hour or an hour after the bars close." The arresting officer smelled alcohol on the defendant's breath. When he looked inside the truck, he could see a container with beer bottles in it but was unable to determine whether or not the beer bottles were opened.

■■ Courts have long recognized that automobiles by their very nature are mobile and have distinguished the search of automobiles from the search of buildings. Because automobiles may readily be driven away, it is often impossible for law enforcement officers to obtain warrants for their search, and the courts have considered this in determining the reasonableness of searches of automobiles. (*People v. Wolf* (1975), 60 Ill. 2d 230.) The critical issues in reviewing searches incident to traffic arrests remain subject, however, to a test of reasonableness, giving consideration to the nature of the events and the surrounding circumstances. *People v. Nally* (1979), 71 Ill. App. 3d 238. See also *South Dakota v. Opperman* (1976), 428 U.S. 364, 49 L. Ed. 2d 1000, 96 S. Ct. 3092.

■■ The validity of all searches must be determined from the particular facts and circumstances of each case. In making this determination, an objective standard is to be applied. Mere subjective suspicion or hunch is

not enough. The key question is whether the facts available to the officer at the moment of the stop warrant a man with reasonable caution to believe that the action taken was appropriate. *People v. Crawford* (1978), 64 Ill. App. 3d 861.

■■ Generally, to justify a full warrantless search of an automobile following a mere traffic law violation, the circumstances must reasonably indicate that a more serious crime has been committed. *People v. Smith* (1978), 67 Ill. App. 3d 952.

■■ Taking the totality of the situation in the case at hand, the facts and circumstances at the officer's command, we find the officer was reasonable in his initial actions and that the initial search was legal.

Since the trial court made no findings or rulings concerning the inventory of the defendant's vehicle, we decline to make any findings thereon. Since we have found that the initial search was legal, we reverse the findings of the trial court and remand the case for further hearing on the validity of all evidence seized, including the inventory search.

Reversed and remanded.

HARRISON and KASSERMAN, JJ., concur.