THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* JACK A. GATES, Defendant-Appellee.

First District (4th Division)   No. 82—692

Opinion filed August 18, 1983.—Rehearing denied October 20, 1983.

Richard M. Daley, State's Attorney, of Springfield (Michael E. Shabat, Paula Carstensen, and Bryan David Schultz, Assistant State's Attorneys, of counsel), for the People.

Stephen Wade Zucker, Ltd., of Skokie (Herbert Abrams, of counsel), for appellee.

PRESIDING JUSTICE ROMITI delivered the opinion of the court:

The State appeals from an order of the circuit court quashing a search warrant and suppressing the evidence obtained as a result of the search, contending the complaint for search warrant established probable cause and that the police acted "in good faith" in obtaining and executing the warrant. 87 Ill. 2d R. 604(a)(1).

On September 10, 1981, special agent Michael Maley of the Northeastern Metropolitan Narcotics and Dangerous Drugs Enforcement Group appeared before a judge of the circuit court of Cook County requesting a search warrant for defendant's person and for a single-family residence and two detached garages at 13843 South Halsted Street in Riverdale, Illinois. The judge issued a warrant authorizing a search for controlled substances, drug paraphernalia, proof of residence and all pre-recorded United States currency of Official Advanced Funds, property of the Northeastern Metropolitan Narcotics and Dangerous Drugs Enforcement Group. The warrant was executed at 6:30 p.m. on September 10, 1981. On September 11, 1981, defendant was charged in two separate complaints, signed by agent Maley, with delivery of a controlled substance to Officer Maley on August 26, 1981, and August 27, 1981. (Ill. Rev. Stat. 1981, ch. 56½, par. 1401.) Defendant was subsequently charged by information with the following offenses, alleged to have occurred on September 10, 1981: (1) possession of controlled substance (cocaine) with intent to deliver; (2) possession of controlled substance (pentobarbital); (3) possession of controlled substance (methylenedioxyamphetamine, sometimes called MDA); and (4) manufacture of cannabis. Ill. Rev. Stat. 1981, ch. 56½, pars. 1401(a)(2), 1402(b), 1401(b), 705(c).

In summary, special agent Maley's complaint for the search warrant contained the following averments. On August 17, 1981, special agent Arturo Martinez purchased a quantity of what was subsequently determined by laboratory analysis to be MDA. He bought this from James Lau in the area of 150-137th Street in Riverdale, Illinois. Lau had asked Martinez to drive to that area, saying that they had to go meet his "man" so Lau could obtain the MDA. Maley, who was

conducting surveillance at that location, saw defendant drive up in a car registered to Barbara Wieck at 13843 Halsted in Riverdale. Defendant and Lau met at defendant's car and then drove away in that car. Another special agent, Johnson, saw the car circle the area without stopping and then return. Maley saw Lau leave defendant's car and return to Martinez' car. Martinez later told Maley that when Lau returned he had the MDA, which Martinez then purchased.

On August 26, 1981, in Chicago Maley purchased a quantity of what was later determined to be MDA from Lau. Prior to the purchase surveillance personnel followed defendant from his residence at 13843 Halsted in Riverdale to an Ivanhoe Liquors parking lot in Riverdale where he met Lau, who was also under surveillance. Lau was followed by the surveillance team to the Chicago location where he delivered the MDA to Maley. When asked by Maley if he could obtain larger quantities Lau responded, "My guy's got a lab." Lau also said his "connect" obtained the needed chemicals for making MDA from students at a Chicago college.

On August 27, 1981, Maley met Lau in a Riverdale parking lot to purchase MDA. Lau asked for $400 and said he would go to his "connect," get the MDA, and bring it back. After receiving the $400 (in pre-identified bills) Lau was followed by a surveillance team to the Ivanhoe Liquors parking lot. Another team followed defendant from his home to the same location. Defendant left his car and entered Lau's vehicle. Lau subsequently returned to the parking lot where Maley was waiting and gave what was subsequently determined to be MDA to Maley, saying "My connect has all you would ever want."

On September 9, 1981, Maley spoke to Lau by telephone, asking him if he could obtain a quantity of MDA for him the next day from his "connect." Lau replied "I told you my guy has all you want." When Maley said he might want an even larger quantity the next day Lau told him "Just let me know before you come over if you want more than a half ounce, all I have to do is call my guy and tell him how much to bring me."

According to Maley a confidential informant told him on August 17, 1981, that Lau had told the informant he was purchasing MDA directly from a person operating a laboratory. Maley also stated in the complaint that according to the Illinois Bureau of Identification defendant had been arrested and convicted of "one count of Dangerous Drugs." The complaint also listed a number of vehicles registered to defendant at the Halsted Street address in Riverdale.

In its brief, the State contends that the complaint met the standard of reliability for the issuance of search warrants based on hearsay

established by the United States Supreme Court in *Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509, and *Spinelli v. United States* (1969), 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584, and in any event, that the officers acted in "good faith." In *Illinois v. Gates* (1983), 462 U.S. ___, ___, 76 L. Ed. 2d 527, 534-35, 103 S. Ct. 2317, 2321, the United States Supreme Court declined to address the latter question, although it had required the parties to brief the issue whether the exclusionary rule " 'should to any extent be modified, so as, for example, not to require the exclusion of evidence obtained in the reasonable belief that the search and seizure at issue was consistent with the Fourth Amendment.' " (462 U.S. ___, ___, 76 L. Ed. 2d 527, 534-35, 103 S. Ct. 2317, 2321.) As more fully explained herein, we find it unnecessary to reach the issue of "good faith" raised by the State in its brief.

In determining whether the substantive content of a complaint for a search warrant is sufficient to establish probable cause, the courts have set forth certain general principles applicable here. In *People v. Thomas* (1975), 62 Ill. 2d 375, 342 N.E.2d 383, our supreme court set forth the principles to be applied in considering whether affidavits for search warrants establish probable cause:

> "In *Ventresca* [*United States v. Ventresca* (1965), 380 U.S. 102, 13 L. Ed. 2d 684, 85 S. Ct. 741] the court said that 'the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the court's cases are to be followed and the constitutional policies served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts towards warrants would tend to discourage police officers from submitting their evidence to a judicial officer before acting.' [Citations.] *** '*** Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.' " 62 Ill. 2d 375, 379-80.

In quashing this warrant, the trial court made the following finding:

> "*** I say for the record, if I were to allow this search war-

rant, I would have to engage in making so many inferences and speculations from the complaint for the search warrant that it would be really unwarranted to do so, and I believe that this particular execution of this particular search warrant, on the basis of the complaint I saw, violates the right of privacy to Jack Gates.''

For the reasons set forth below, we conclude that a fair, common-sense reading of the complaint (*cf. People v. Bauer* (1981), 102 Ill. App. 3d 31, 37, 429 N.E.2d 568) established sufficient facts for the issuance of the warrant; that is, the facts were "sufficient in themselves to warrant a man of reasonable caution to believe that the law was being violated and that evidence of it was in the premises or vehicle or on the person to be searched." *People v. Francisco* (1970), 44 Ill. 2d 373, 376, 255 N.E.2d 413.

In *Aguilar v. Texas* (1964), 378 U.S. 108, 114, 12 L. Ed. 2d 723, 729, 84 S. Ct. 1509, 1514, the court said: "Although an affidavit may be based on hearsay information and need not reflect the personal observations of the affiant *** the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed *** was 'credible' or his information 'reliable.' ''

In *Illinois v. Gates* (1983), 462 U.S. ___, ___, ___, 76 L. Ed. 2d 527, 543, 548, 103 S. Ct. 2317, 2327-28, 2332, the court concluded it was wiser to abandon the *Aguilar-Spinelli* test in favor of the "totality of the circumstances analysis that traditionally has informed probable cause determinations." (462 U.S. ___, ___, 76 L. Ed. 2d 527, 548, 103 S. Ct. 2317, 2332.) The court stated:

"The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for *** conclud[ing]' that probable cause existed. *** We are convinced that this flexible, easily applied standard will better achieve the accommodation of public and private interests that the Fourth Amendment requires than does the approach that has developed from *Aguilar* and *Spinelli*." 462 U.S. ___, ___, 76 L. Ed. 2d 527, 548, 103 S.

Ct. 2317, 2332.

The complaint for a search warrant clearly establishes the reliability of James Lau's information. On three separate occasions law enforcement officers purchased controlled substances through Lau. Lau was named. The agents actually observed and participated in the sales and thus were not relying entirely on the uncorroborated word of an anonymous informant. Moreover, with respect to the statements of his fellow agents, the rule is that a law enforcement officer such as special agent Maley is entitled to rely on knowledge obtained by his fellow officers who are working together with him in the same investigation. (*Cf. People v. Peak* (1963), 29 Ill. 2d 343, 348-49, 194 N.E.2d 322; *Illinois v. Andreas* (1983), 463 U.S. ____, ____ n.5, 77 L. Ed. 2d 1003, 1010 n.5, 103 S. Ct. 3319, 3324 n.5.) Therefore, it was reasonable for agent Maley to rely on the various items of information set forth in the complaint which, although hearsay, were provided to him by his fellow agents as a result of their observations and investigations.

Moreover, laboratory tests confirmed that the substances obtained by Lau were in fact contraband. The complaint recites in copious detail: (1) the incident on August 17, 1981, when special agent Martinez purchased a controlled substance from Lau, who, according to agent Maley's own observations, very probably obtained the substance from defendant; (2) the instance on August 26, 1981, when Maley bought a controlled substance from Lau after Lau's meeting with defendant nearby; (3) the incident on August 27, 1981, in which Maley purchased a controlled substance from Lau again after a meeting with defendant; in addition, (4) on September 9, 1981, Lau confirmed in a conversation with Maley that Lau's supplier could get agent Maley "all you want," and that all Lau had to do was "call my guy and tell him how much to bring me." Lau proved he could obtain the contraband at will, claiming he only had to make a phone call to his supplier. Lau's meeting with defendant, which the officers observed, was strong circumstantial evidence that defendant was Lau's supplier. The various vehicles involved were all registered to the address in the warrant, whence defendant was actually observed to begin the journey to meet Lau. And defendant's criminal record suggested a drug background. Despite these incriminating appearances, defendant contends the complaint fails to set forth any of the underlying circumstances necessary to enable the judge to independently decide on the validity of the affiant's conclusion that the narcotics were at 13843 Halsted, reasoning that the statement by Lau, "My guy's got a lab," is an unsubstantiated conclusion. We disagree and find the conclusion was eminently

reasonable and substantiated by the sales of contraband on August 16, 17 and 26 and all the other circumstances Maley enumerated.

Defendant's presence on these occasions when a sale was consummated was not mere coincidence. Rather, it is clear from the affidavit that when Lau said his "guy" operated a lab, he was referring to the person who supplied him with drugs, and it was reasonable under these circumstances for the officers to conclude that this person was defendant Gates and that defendant and Lau were acting jointly. On three separate occasions the officers observed defendant supply Lau with drugs he then sold to police. Every circumstance set forth in the warrant is consistent with this conclusion.

We believe it misses the point to argue, as does defendant, that at no time did the officers see anything resembling the passing of narcotics or anything else from defendant to Lau. Although the officers apparently did not actually observe the narcotics changing hands between Lau and defendant, the extensive undercover police work resulted in police observations from which the only reasonable conclusion was that defendant had met Lau on these three occasions to provide him with the contraband he then sold to the law enforcement agents. Concerning the question of where the drugs were located, we believe it was reasonable under all the circumstances for the law enforcement officers on September 10, 1981, to credit these statements of Lau that defendant had a source of narcotics in his home. Under *Aguilar, Spinelli* or *Gates*, it was reasonable for these officers to believe that defendant had controlled substances either in his home or in the vehicles they had observed. *People v. Winters* (1983), 97 Ill. 2d 151.

The judgment of the circuit court of Cook County is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

JIGANTI and LINN, JJ., concur.