THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. UBALDO ESPARZA CORRAL, Defendant-Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. LIWO ARRENDONDO CELIO, Defendant-Appellee.

Fourth District   Nos: 4—86—0122, 4—86—0123 cons.

Opinion filed September 19, 1986.

Donald D. Bernardi, State's Attorney, of Pontiac (Kenneth R. Boyle, Robert J. Biderman, and Kenneth R. Baumgarten, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Michael Jay Green, of Chicago, for appellee.

JUSTICE MORTHLAND delivered the opinion of the court:

The Livingston County circuit court suppressed a quantity of cannabis and heroin seized from a truck in which the two defendants were riding. The State's Attorney has certified that this suppression substantially impairs his ability to prosecute the defendants and, thus, takes this interlocutory appeal. (103 Ill. 2d R. 604(a)(1).) We affirm.

On February 14, 1985, defendant Corral was driving a white 1977 International truck northbound on Interstate 55 in Livingston County, Illinois. Defendant Celio was a passenger in the vehicle. At approximately 11 a.m., Sergeant Don Trent of the Illinois State Police paced the defendants' vehicle and determined that it was traveling at 59 or 60 miles per hour in a 55 miles per hour zone. Accordingly, Trent stopped the defendants' truck on Interstate 55. At the suppression hearing, Sergeant Trent testified that he and his partner acted upon a telephone call from the Illinois Division of Criminal Investigation

(DCI) at Bloomington, which informed them of the description and whereabouts of the defendants' vehicle. The State police were told that the truck was possibly carrying a large quantity of drugs and were instructed to stop the truck if they observed any traffic violation.

Trent testified that defendant Corral produced a driver's license when requested to do so. Corral also presented a registration card for the truck. However, Trent testified, Corral did not provide a logbook, a bill of lading, a letter of authorization to indicate his passenger was legally in the truck, or a medical card. Trent stated that he believed defendant Corral was violating the Illinois motor carrier safety regulations by his failure to produce these items. (Ill. Rev. Stat. 1985, ch. 95½, par. 18b—100.) The defendant does not contest these violations. Trent informed defendant Corral that since he had no logbook, he would be required to rest for eight hours before proceeding on his journey. Upon inquiry of Corral at the State police headquarters, Trent learned that the truck's cargo was chili peppers. Acting on instructions from DCI, he informed Corral that the Department of Agriculture would probably want to check the produce. Since Corral had indicated that no qualified driver would be available to drive the truck immediately, Trent had the vehicle towed from the interstate and it was eventually taken to a private garage. The vehicle was kept under police watch, and Trent testified that he had no doubts about the security of the truck at the garage where it ws taken.

Trent further testified that, at the police station, defendant Corral told him to "go ahead and check the cargo." Trent informed Corral that they would not proceed with the agricultural inspection without written consent from Corral. Trent did not recall any conversation with the passenger Celio. The written consent signed by defendant Corral gave permission to search "a 1977 International straight truck 85 Texas ZM283." Trent acknowledged that this consent form was signed after he had represented to the defendant that the Department of Agriculture would need to search his cargo.

Sergeant Trent and Floyd H. Aper of the DCI described the search of the defendants' vehicle. Authorities brought to the garage a dog that was trained to ferret out illicit drugs. This dog sniffed the interior of the truck's cargo compartment, as well as the exterior. Aper testified that the dog indicated a positive response to drugs while sniffing one of the tins of peppers inside the truck. The dog also reacted positively when sniffing the outside corner of the cargo box closest to the cab. An initial search, which included inspection of boxes and tins of peppers contained in the cargo bed, revealed noth-

ing. Officers also opened two suitcases. One of these suitcases contained documents, including a passport, indicating the suitcase belonged to the passenger, Celio. Subsequently, the searchers removed the wheels from the truck and removed the tires from the wheels. They then began examining the walls of the cargo bed interior more closely. This examination indicated that the front interior wall of the cargo bed sounded solid, while the other interior walls sounded hollow. This discovery led authorities to remove the interior plywood panel from the front of the cargo bed, revealing a substantial quantity of marijuana. After this discovery, the authorities retraced their original search, including the suitcases. In the pocket of some pants carried within defendant Celio's suitcase, the officers discovered a quantity of heroin.

The two defendants also testified. Defendant Celio stated that his suitcase was in the cargo bed of the truck where he had placed it at the beginning of the defendants' trip from Texas. He testified that he had not given anyone permission to search his suitcase. Celio also indicated that his Mexican passport was in the suitcase.

Defendant Corral, the owner and driver of the truck in question, testified that he was exceeding the 55 miles per hour speed limit when the truck was pulled over. After the police officers drove him to their headquarters, Corral stated, Sergeant Trent told him that the agriculture department would need to inspect the cargo of peppers. Corral testified that he agreed to an agriculture inspection and further acknowledged that he had signed the consent-to-search form given him by Sergeant Trent. However, Corral stated, he signed the consent form because Trent represented to him that the consent was necessary in order for the agricultural inspection to take place.

Following discovery of the cannabis and heroin, the two defendants were placed under arrest and subsequently indicted for unlawful possession of heroin and cannabis. (Ill. Rev. Stat. 1983, ch. 56½, pars. 704(e), 1401(a)(1).) After the evidentiary hearing on the motions to suppress, the trial court filed its findings of fact and conclusions of law. The court concluded that Sergeant Trent had probable cause to arrest defendant Corral for speeding, but that the offense did not justify searching the cargo area of the truck. The court also decided that the initial seizure of the truck was unwarranted, since a qualified driver was unavailable. Given the circumstances and the representations made by Sergeant Trent, the court concluded that defendant Corral had consented only to an inspection of the truck's agricultural cargo. Moreover, this consent did not extend to the two defendants' suitcases, there being no reason to believe that the suitcases con-

tained any agricultural cargo. The court determined that the search of defendant Celio's suitcase and the interior walls of the truck was not supported by probable cause or knowing consent. Accordingly, the court ordered the cannabis and heroin seized from the defendants suppressed.

Subsequently, the State filed a motion for rehearing, asserting that the officers who searched the defendants' vehicle possessed probable cause to believe that the defendants were transporting a quantity of marijuana and heroin. The State acknowledged that supporting evidence was available at the time of the original hearing, but that it had not presented the evidence because it relied upon Corral's purported consent to the search. The court found that no extraordinary circumstance or newly discovered evidence justified reopening the hearing on the motions to suppress. Accordingly, the court allowed defendants' objection to the motion for rehearing. This appeal ensued.

Initially, we note that defendant Corral sought only to suppress the cannabis found in his truck. Likewise, defendant Celio sought only to suppress the heroin found in his suitcase. Thus, no issue of standing is before this court.

■ Police must obtain a search warrant prior to searching a motor vehicle, unless the circumstances fall within an exception to the warrant requirement. A search warrant need not be obtained if: (1) police have probable cause to believe that the vehicle was used in or contains evidence of a crime; (2) police obtain valid consent to the search; (3) police search the vehicle incident to a lawful arrest; or (4) the vehicle is lawfully impounded and an inventory search results. (*People v. Wetherbe* (1984), 122 Ill. App. 3d 654, 462 N.E.2d 1.) In the instant case, the State propounds only the first and second exceptions as justifying the search which produced the heroin and cannabis.

■ When police officers have probable cause to believe that a motor vehicle contains contraband, they may, without a warrant, search any area of the vehicle or any container within the vehicle where they reasonably believe the contraband might be found. (*United States v. Ross* (1982), 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157.) When such probable cause exists, the actual search may take place away from the scene of the original arrest. (*United States v. Johns* (1985), 469 U.S. 478, 83 L. Ed. 2d 890, 105 S. Ct. 881.) Whether probable cause to search exists is a factual inquiry and the trial court's determination on this issue will not be overturned unless it is against the manifest weight of the evidence. *People v. Clark* (1982), 92 Ill. 2d 96, 440 N.E.2d 869; *People v. Wetherbe* (1984), 122 Ill. App. 3d 654, 462 N.E.2d 4.

The Illinois Supreme Court has stated that probable cause to search an automobile exists when "the totality of the facts and circumstances known to the officer at the time of the search would justify a reasonable person in believing that contraband was present in the automobile." (*People v. Clark* (1982), 92 Ill. 2d 96, 100, 440 N.E.2d 869, 871.) Absent some reasonable indication that a more serious crime has been committed, a mere traffic violation cannot justify a full search of a defendant's vehicle. *People v. Watts* (1981), 93 Ill. App. 3d 420, 417 N.E.2d 247.

■ We believe the trial court was correct when it concluded that Sergeant Trent knew only that the defendants' vehicle was exceeding the speed limit. This knowledge did not provide probable cause to search.

The State argues, however, that DCI Agent Aper's knowledge that Federal agents in Chicago had information suggesting narcotics were aboard the defendants' vehicle gave probable cause. Generally, a police officer may rely upon information he or she obtains from a fellow officer engaged in the same investigation to establish probable cause. (*People v. Peak* (1963), 29 Ill. 2d 343, 194 N.E.2d 322; *People v. Gates* (1983), 118 Ill. App. 3d 70, 454 N.E.2d 1018.) In the instant case, we agree with the circuit court that any connection the searchers may have had with Federal investigators was too attenuated to provide probable cause to search. The record does not support the State's effort to attribute information the Federal agents possessed to the officers conducting the search.

Aper's testimony indicates only that he was aware that DCI Director Ron Grimming had indicted that Grimming was in contact with Federal agents in Chicago. The Federal authorities stated they had wiretap evidence suggesting that illicit drugs were aboard the defendants' truck. Although this third-hand hearsay was self-corroborating to the extent that the vehicle's description and the driver's identity were correct, there is no suggestion that Aper or anyone conducting the search knew either the identity of the Federal agents in Chicago or the nature of their evidence. The officers conducting the search had no way of knowing or judging the accuracy of the information upon which they acted, or even the original source of that information. Although the record suggests that Federal agents may have had evidence sufficient to obtain a search warrant, the officers conducting the search did not possess information giving them probable cause to believe the defendants' truck contained illicit drugs. Moreover, it is undisputed that the officers conducting the search were aware that the truck's driver was required to rest for eight hours. The officers

knew they would have complete control over the defendants' vehicle during that rest period. If some officer or agency had probable cause to search the truck, ample time existed to obtain a warrant, or at least communicate that knowledge to the officers conducting the search.

■■ ■ We likewise reject the State's argument that defendant Corral consented to the search which produced the contraband at issue. Consent to a search must be voluntary, and the State has the burden of establishing voluntariness. (*People v. Koniecki* (1985), 135 Ill. App. 3d 394, 481 N.E.2d 973.) Moreover, consent to a search "waives the warrant requirement only to the extent granted by defendant in his consent." *People v. Porter* (1986), 141 Ill. App. 3d 71, 73, 489 N.E.2d 1154, 1156.

Under these principles, the circuit court correctly determined that defendant Corral consented only to an inspection for agricultural purposes, and that the actual search exceeded the bounds of the defendant's consent. The State's witnesses candidly acknowledged that their reference to an agricultural inspection was only a ruse to permit a search of the defendants' vehicle. This admission, combined with the uncontradicted testimony regarding the officers' representations to Corral about their intentions, leads directly to the trial court's conclusion that Corral consented only to an inspection of his cargo by the Department of Agriculture.

An additional circumstance undercuts the possibility of consent with regard to the suitcase: only defendant Corral gave permission to search. Consequently, when the searching officers opened defendant Celio's suitcase and examined its contents, they were exceeding any consent which Corral could have given. The testimony was uncontradicted that defendant Celio's suitcase contained a passport with his name on it, and that the officers viewed these documents during their first search. These documents indicated that the suitcase belonged to Celio rather than Corral and, thus, identified the person whose consent was necessary.

■■ Finally, we do not believe the circuit court abused its discretion in refusing to grant the State's motion for a rehearing. The State has conceded that any testimony it might present concerning probable cause to search the defendants' vehicle was available to it at the original hearing. The fact that the State apparently chose to rely most heavily upon its theory that defendant Corral had consented to the search is not a circumstance of the sort which would justify a rehearing on this issue. *People v. Coleman* (1981), 100 Ill. App. 3d 306, 426 N.E.2d 1124.

For the foregoing reasons, we conclude that the circuit court properly suppressed the cannabis seized from the truck with regard to defendant Corral and the heroin seized from the suitcase in regard to defendant Celio. Likewise, the circuit court did not err in denying the State's motion for a rehearing on the suppression. We therefore affirm the order of the circuit court.

Affirmed.

WEBBER and SPITZ, JJ., concur.